**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| JOSE R. ANDÚJAR-BASCO<br><br>    Petitioner<br><br>          v.<br><br>UNITED STATES OF AMERICA<br><br>    Respondent | **Civil No. 08-1785 (SEC)** |

**OPINION AND ORDER**

Pending before this Court is Petitioner Jose R. Andújar-Basco's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, seeking for the Court to grant an evidentiary hearing, and upon proof of Petitioner's allegations of ineffective counsel assistance, vacate Petitioner's conviction. See Docket # 5. The Government opposed. See Docket # 8. After reviewing the filings, and the applicable law, Petitioner's motion is **DENIED**.

**Factual and Procedural Background**

On December 16, 2005, a grand jury charged Petitioner with conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, (Count One); and for aiding and abetting in the possession with intent to distribute five (5) or more kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §2, (Count Two). Crim. No. 04-0375 (SEC), Docket # 44. Following a five-day jury trial, Petitioner was found guilty on both counts. Crim. No. 04-0375 (SEC), Docket #124. This Court sentenced Petitioner to one hundred twenty-one (121) months in prison as to Counts One and Two, to be served concurrently with each other. Crim. No. 04-0375 (SEC), Docket # 155.

The following facts gave rise to Petitioner's conviction. The Drug Enforcement Agency (DEA) paid a confidential informant to make a purchase of ten (10) kilograms of cocaine from

**CIVIL NO. 08-1785 (SEC)**                                                                                                             Page 2

---

Freddy Cancel-Camacho, who was indicted with Petitioner.  See United States v. Andújar-Basco, 488 F.3d 549, 551 (1st Cir.2007).  Cancel and the informant met on multiple occasions and had several telephone conversations, many of which were recorded by the DEA and played for the jury at trial.  Id.

Cancel told the informant that the only person who could acquire ten kilograms of cocaine was Petitioner.  Id.  During negotiations, the informant went to Cancel's house to discuss the transaction and spoke to Petitioner on the phone.  Id.  Petitioner confirmed that he would sell cocaine to the informant, but lowered the quantity of cocaine to five kilograms and set the purchase price at $85,000.  Id.  Although Petitioner, Cancel, and the informant had agreed to meet the next day to complete the transaction, Petitioner and Cancel did not show up.  Id.  Consequently, the informant left, and while on his way back home received a call from Cancel.  Id.  At one point in the conversation, Petitioner "took the phone from Cancel and told the informant that he had the five kilograms and was ready to go forward with the deal."  Id.  It was agreed that Petitioner would give Cancel the cocaine, who would then give it to the informant.  Id. at 552. Cancel would thereafter pay Petitioner.  Id.

Cancel was arrested at his house after completing the sale of the five grams of cocaine.  Id.  Cancel subsequently agreed to call Petitioner to arrange a meeting for Petitioner's payment at a shopping center.  Id.  Petitioner was arrested at the shopping center parking lot after being identified by Cancel.  Id.  A hundred-ten individually wrapped clear plastic bags, which later a forensic chemist testified were approximately seventy grams of cocaine, were found under the driver' seat of the car Petitioner drove to the shopping center.  Id.

On appeal, Petitioner requested a new trial alleging that (1) "the government [had] infringed his Fifth Amendment privilege against self-incrimination by eliciting testimony concerning his election to remain silent while being questioned..."; and (2) that his right to fair

**CIVIL NO. 08-1785 (SEC)**                                                                                                      Page 3

trial was further violated when the prosecutor made improper closing arguments to the jury. Id. at 552-53. The Court held that, although there were plain errors with respect to both allegations, see id. at 558 and 561, Petitioner had failed to establish prejudice since "the record, viewed in the aggregate, present[ed] overwhelming evidence establishing Andújar's guilt." Id. at 561. Thus his conviction was affirmed by the First Circuit on June 6th, 2007. Andújar-Basco, 488 F.3d at 561.

On July 17, 2008, Petitioner filed a *pro se* motion under 28 U.S.C. § 2255 alleging trial counsel: (1) failed to allow Petitioner to testify on his own behalf during trial; (2) failed to raise objections during improper closing arguments; and (3) cumulative effect of errors. See Docket # 5. In opposition, the Government contends that (1) counsel was not ineffective and instead are consistent with a sound trial strategy, (2) the issue of improper closing arguments was already decided on direct appeal and may not be litigated on a collateral challenge, and (3) the errors, even when aggregated, fail to establish prejudice. Docket # 8.

**Standard of Review**

Section 2255 provides that a prisoner may vacate his sentence when the sentence was imposed in violation for the Constitution or laws of the United States, among others. 28 U.S.C. § 2255. A district court must grant an evidentiary hearing on Petitioner's claims unless "the motion and the files and record of the case conclusively show that the prisoner is entitled to no relief." Id. A district court may forego an evidentiary hearing when "the movant's allegations, even if true, do not entitle him to relief, or [when] the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.' " David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (quoting United States v. McGill, 11 F.3d 223, 225-26 (1st Cir. 1993)).

**CIVIL NO. 08-1785 (SEC)** Page 4

The standard of review for Petitioner's claim of ineffective assistance of counsel is a "very forgiving" one. See U.S. v. Theodore, 468 F.3d 52, 57 (1st Cir. 2006) (citing Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000)). The Sixth Amendment to the Constitution of the United States provides in part that: "[i]n all criminal prosecutions, the accused shall enjoy the right to [...] have the Assistance of Counsel for his defence (sic)." U.S. CONST. amend. VI. The legal assistance envisioned by the Amendment, which protects the fundamental right to a fair trial, is not satisfied by merely having a lawyer present alongside the defendant during trial. Strickland v. Washington, 466 U.S. 668, 684-685 (1984). In order to comply with the Sixth Amendment guarantee, counsel must provide "effective assistance." Id. at 686 (1984).

A convicted defendant who questions the validity of the criminal proceeding against him by way of claiming ineffective assistance of counsel must meet the two-part test established by the U.S. Supreme Court in Strickland. This requires the criminal defendant to first "establish that (1) 'counsel's representation fell below an objective standard of reasonableness', and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (citing Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland, 466 U.S. at 684)). In relation to the first part of the test, the U.S. Supreme Court has stated that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 700.

Even if a criminal defendant overcomes this rather formidable obstacle, his ineffective assistance claim will not prosper unless he can also establish the second prong of the test. See id. Strickland's holding also requires a showing that counsel's deficient performance prejudiced the defendant. Id. at 694. That does not mean, however, that the court must address the two prongs of the test in the order above, or even analyze both. If the court is satisfied that the

**CIVIL NO. 08-1785 (SEC)**  Page 5

defendant cannot establish either that Counsel was deficient, or that such deficiency prejudiced the defendant, it may dispose of the claim without further ado. See id. at 697.

Finally, the court's evaluation of Counsel's performance must be highly deferential. Id. at 691. The Supreme Court held that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Therefore, to make a fair assessment of an attorney's performance, the court should attempt to eliminate the distorting effects of hindsight. Id.

**Applicable Law and Analysis**

*Fifth Amendment Right to Testify*

Petitioner's main contention is that counsel violated his Fifth Amendment right to testify in his own defense during the criminal trial. See Docket # 5. Attached to Petitioner's § 2255 motion is a sworn affidavit where Petitioner states that he never waived his right to testify, nor advised his attorney that he would not testify during the trial. Docket # 5-2. Petitioner further avers that throughout the trial he was under the impression that he would testify, and that if he failed to do so, it was because his attorney disregarded his explicit requests. Id. Petitioner claims that if allowed to testify, he would have explained to the jury his non-involvement in the criminal case and would have attempted to discredit the testimony of the government witness. Id.

This Court first reviews whether counsel's performance fell bellow an objective standard of reasonableness. Strickland, 466 U.S. at 684. Petitioner claims counsel's aid was deficient since he disregarded Petitioner's wishes to testify in the criminal trial, violating his constitutional right. Docket # 5. This right is protected by the Fourteenth Amendment's due process guarantee, the Sixth Amendment's right to call witnesses in one's favor, and the Fifth

**CIVIL NO. 08-1785 (SEC)**                                                                 Page 6

Amendment's guarantee against compelled testimony. See Owens v. United States, 483 F.3d 48, 58 (1st Cir. 2007) ("defendant has a 'fundamental constitutional' right to testify in his own defense...") (quoting Rock v. Arkansas, 483 U.S. 44, 51-53 (1987)).  Only the defendant can waive his or her right to testify since it is guaranteed by the Constitution. Owens, 483 F.3d at 58 ("The right to testify may not be waived by counsel acting alone.") (citing United States v. Mullins, 315 F.3d 449, 454 (5th Cir.2002)).  Counsel plays a fundamental role in advising the client in this respect, since the court "is not required to apprise a defendant of his right to testify or inquire whether he has waived it." Id.

While failing to inform the client of his right to testify could be prejudicial and a violation of his constitutional rights, Owens, 483 F.3d at 58, from the evidence before this Court, this is not Petitioner's case. Rather, counsel's decision not to put Petitioner on the stand is consistent with a sound trial strategy. Strickland, 466 U.S. at 689 ("the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'") (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Pina v. Maloney, 565 F.3d 48, 55 (1st Cir.2009). The Government alleges that the decision for Petitioner not to testify was part of a sound trial strategy, given the overwhelming amount of evidence against him and the suppression of co-defendant Cancel's statements. Docket # 8. Thus they argue that Petitioner did not testify because it would have contradicted counsels' efforts and success in suppressing incriminating evidence. Id.  If Petitioner testified, his own testimony could have been used in rebuttal and could have adversely affected Petitioner's case. Id.  As discussed before, it is not this Court's role to second guess informed decisions, or strategic choices of counsel as long as reached after careful consideration and are the product of an attorney's professional judgment. Strickland, 466 U.S. at 681.  Given the tough decision faced by counsel between putting Petitioner on the stand, or re-admitting possibly detrimental and already suppressed evidence, this Court does not find counsel's strategy unreasonable. In an ineffective assistance of counsel claim, the main inquiry in evaluating counsel's performance

**CIVIL NO. 08-1785 (SEC)**                                                                 Page 7

is "whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. Taking in consideration the facts of the case and the available evidence, Petitioner's counsel's actions were not unreasonable.

Moreover, Petitioner's silence and failure to protest when it was apparent that counsel would not call him to the stand can be seen as Petitioner's acquiescence to counsel's strategy and constitutes a waiver of this right to testify. See Winfiedl v. Roper, 460 F.3d 1026, 1035 (8th Cir.2006) (holding that waiver of that right [to testify] is properly found where... defendant did not object when his counsel rested without calling him to testify.")(citing United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir.1987)).  Although Petitioner claims that counsel, disregarding his explicit wishes, failed to put him on the stand, it is uncontested that he was present during trial and he was conscious of how the case was proceeding.  See Docket # 5. Therefore, Petitioner had ample opportunity to protest his lawyer's actions at trial.  His failure to speak up against counsel's decision, when it became apparent that his attorney would rest without putting him on the stand, shows that Petitioner acquiesced to counsel's strategic decisions.  Since the decision not to testify seems to stem from counsel's trial strategy and Petitioner failed to contest this decision at an appropriate moment during trial, this Court is not persuaded by Petitioner's arguments.

Additionally, even if this Court were to find that counsel was deficient in its performance, the record indicates that Petitioner suffered no prejudice from counsel's defense. In Andújar-Basco, 488 F.3d 549, the First Circuit examined the evidence presented at trial, and subsequently held that "[g]iven the overwhelming strength of the government's case," Petitioner did not suffer prejudice from the errors committed, and discussed in detail the strength of the evidence available to sustain Petitioner's conviction. Id. at 558. In short, the Court found that the testimony of the confidential informant, supported by the recorded conversations, and the testimony of several officers established a strong enough case against Petitioner that such that

**CIVIL NO. 08-1785 (SEC)**                                                                                       Page 8

"Andújar... failed to establish that the error[s] 'had [a] prejudicial impact on the jury's deliberations." Id. at 559 (quoting United States v. Olano, 507 U.S. 725, 734 (1993)).

Similarly, we find no prejudice in that Petitioner did not testify. Petitioner avers that he would have explained his non-involvement in the case and that he would have attempted to discredit the testimony of the government's witness. Docket # 5-2. However, the recorded conversations, the available testimonies, already found credible by a jury, contradict a possible testimony of non-involvement from Petitioner. In addition, had Petitioner testified, already suppressed evidence could have been introduced, increasing the chances of a conviction. See Bucuvalas v. United States, 98 F.3d 652, 658-59 (1st Cir. 1996) (holding that had defendant testified "the likelihood of a conviction would have been increased by the introduction of the prior conviction and by ... inevitable admissions"); see also Winfield, 460 F.3d at 1035 (holding that defendant had suffered no prejudice despite counsel's failure to call him at trial). Considering the First Circuit's holding in Andújar-Basco, and the overwhelming evidence against Petitioner, this Court fails to see how Petitioner was prejudiced by the errors he claims counsel committed. Given that Petitioner has neither established prejudice nor defective performance by counsel, Petitioner's claim of ineffective assistance lacks merit.

*Improper Closing Arguments*

Petitioner also argues that counsel's failure to object during the government's closing argument adversely affected the outcome of the case, and the appellate review. Docket # 5. However, this claim fails for two reasons: (1) it was already decided on direct appeal by the First Circuit and (2) Petitioner fails to establish he suffered prejudice from these remarks.

The First Circuit has consistently held that "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." Singleton v. U.S., 26 F.3d 233, 240 (1st Cir. 1994) (citing Dirring v. U.S., 370 F.2d 862, 864 (1st Cir. 1967)). Thus, any issue seen

**CIVIL NO. 08-1785 (SEC)**                                                                                                Page 9

on direct appeal by the First Circuit, relating to Crim. No. 04-0375 (SEC), is precluded from being considered by this Court through the use of a 28 U.S.C. § 2255 motion.

In Andújar-Basco, the First Circuit found that although the remarks made by the government were improper, Petitioner was unsuccessful in proving prejudice. On this point, the appellate court held that "it is not reasonably likely [that] these isolated remarks affected the outcome of the trial" since "the record, viewed in the aggregate presents overwhelming evidence establishing Andujar's guilt." Id. at 561. Since this claim was settled on direct appeal, Petitioner is foreclosed from making this claim in the collateral challenge. Berthoff v. United States, 308 F.3d 124, 127-28 (1st Cir.2002).

*Cumulative Effect of Errors*

Petitioner claims that the errors committed by counsel had a cumulative effect, which require vacating his conviction, or at least granting him an evidentiary hearing. The First Circuit has held that, under limited circumstances, the cumulative effect of several errors may prejudice a defendant to the extent that his conviction must be overturned. In U.S. v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993), the Court held that "individual errors insufficient of themselves to necessitate a new trial may in the aggregate have a more debilitating effect." Id. at 1195-96. However, in this case, there is no single constitutional error, and nothing can accumulate to the level of a constitutional violation.

In his motion, Petitioner simply states that the errors committed by counsel, evident and interrelated had a "devastating effect on the Petitioner's right to due process and a clear violation of his Sixth Amendment right to effective assistance of counsel." Docket # 5. Unfortunately, the alleged errors are not sufficient to warrant an evidentiary hearing. As previously stated, the appeals court reviewed the evidentiary sufficiency of the case, and concluded that there was overwhelming evidence to sustain a conviction and sentence.

**CIVIL NO. 08-1785 (SEC)** Page 10

Andújar-Basco, 488 F.3d at 561. Moreover, Petitioner failed to establish that counsel was ineffective in its assistance. Accordingly, there is no cumulative effect of errors which warrants an evidentiary hearing. U.S. v. Flemmi, 402 F. 3d 79, 95 n.23 (1st Cir. 2005) (finding that "because we have found that none of [the defendant's] individual complaints resulted in prejudice, and that most are completely without merit, we reject the final contention that his conviction was tainted by cumulative error.") (quoting U.S. v. DeMasi, 40 F.3d 1306, 1322 (1st Cir. 1994)).

**Conclusion**

Based on the foregoing, Petitioner's petition under Section 2255 is hereby **DENIED**, and the instant case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of August, 2010.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge